## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: **MANUEL ANTONIO DOMENECH RODRIGUEZ** DEBTOR | CASE No. 10-05835 (BKT) CHAPTER 7 |
| **WIGBERTO LUGO MENDER,** Trustee For The Estate of Manuel Antonio Domenech Rodriguez **PLAINTIFF** v. **RUTH E. RODRIGUEZ BORGES** DEFENDANT | ADV. NO. 11-00168 (BKT) **COMPLAINT TO OBTAIN THE TURNOVER OF PROPERTY OF THE ESTATE** |

### OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (DOCKET 10)

**TO THE HONORABLE COURT:**

**COMES NOW**, Wigberto Lugo Mender, Esq., duly appointed Chapter 7 Trustee for the Estate of the Debtor Manuel A. Domenech Rodríguez, through the undersigned attorneys, herein **STATES** and **PRAYS** as follows:

### I. FACTUAL AND PROCEDURAL BACKGROUND

1. Defendant Ruth E. Rodríguez Borges filed a petition for Divorce with the Puerto Rico State Court (San Juan) against herein Debtor Manuel A. Domenech Rodríguez on October 3rd 2000. Rodríguez v. Domenech, Civil Núm. K DI2000-2183 (701).

2. Judgment was subsequently reached through Sentence issued by the State Court on December 21st 2000, granting the Divorce and further imposing

provisional child support to be paid by Debtor in favor of their daughter. [1] *See*, Attachment 1.

3. Upon their divorce and after numerous efforts to liquidate the conjugal partnership had between them, Debtor Manuel A. Domenech Rodríguez and Defendant Ruth E. Rodríguez Borges were finally able to reach an agreement by subscribing "*Contrato de Obligación de Liquidación de Gananciales*" on June 13th 2002. It was therein settled the manner in which the community properties and debts pertaining to their conjugal partnership would be ultimately liquidated and divided between them. *See*, Attachment 2.

4. Debtor Manuel A. Domenech Rodríguez and Defendant Ruth E. Rodríguez Borges *fully* accomplished the process of liquidating and dividing their assets and real properties on November 25th 2002, through the issuance of Public Deed No. 303, "*Liquidación de Gananciales, Adjudicación y Modificación de Hipoteca*". *See*, Attachment 3.

5. It was therein established that both Debtor and Defendant would have rights to a fifty percent (50%) participation over each of two residential properties belonging to their conjugal partnership; one located at Palmas del Mar, in Humacao, and the other located at Urbanización San Francisco, in Río Piedras.

6. The latter, while affected by two mortgages, gave a calculated net worth of

---

[1] A *Proof of Claim* was filed by Defendant Ruth E. Rodríguez Borges in the present bankruptcy case on July 27th 2010 requesting dischargeability and payment of domestic child support, under 11 USC §523(a)(5) and 11 USC §507(a)(1). [Claim 1]. Such Claim is unrelated to the issues pertaining to the present Complaint.

five hundred fifty five thousand dollars ($555,000.00), the fifty percent (50%) of which being two hundred seventy seven thousand five hundred dollars ($277,500.000).

7.   It was decided that such residential property located at Urbanización San Francisco in Río Piedras, was to be awarded to herein Defendant Ruth E. Rodríguez Borges. *See*, Attachment 3.

8.  While assuming the two existing mortgages, Mrs. Ruth E. Rodríguez Borges agreed to modify and hand over both promissory notes, each for a value of one hundred two thousand five hundred dollars ($102,500.00), to herein Debtor Manuel A. Domenech Rodríguez, as guarantee of payment of his participation over such property, ascending to a total amount to be paid to him of **two hundred five thousand dollars ($205,000.00)**, as agreed by Defendant herself through Public Deed No. 303.  See, Attachment 3.

9.  However, Defendant Ruth E. Rodríguez Borges did not comply with her obligation of paying herein Debtor Manuel A. Domenech Rodríguez the amount owed to him as participation over the residential property located at Urbanización San Francisco.

10.  Furthermore, through **Resolution** emitted on **June 21st 2005**, the Puerto Rico State Court awarded Mrs. Ruth Rodríguez Borges the right to use and possess such property, as custodial parent of their minor daughter A.G.D.R., based on homestead provisions under 31 LPRA §385a. *See*, Attachment 4.

11.  Upon Mrs. Rodíguez' request for homestead, an evidentiary hearing was

held between the parties, and on that same day the **Resolution** of reference was emitted by the Court based on the following facts:

a.  That Divorce was granted to the parties on December 21st 2000.

b.  That during their marriage the parties had jointly accumulated and possessed debts and properties in common ("bienes y deudas de carácter ganancial").

c.  That Mrs. Ruth E. Rodríguez Borges lived in the residential property located at Urbanización San Francisco, along with the parties' minor daughter, A.G.D.R.

d.  That after their Divorce, Mrs. Rodríguez *was awarded exclusive ownership* of such residence located at Urbanización San Francisco.

e.  That a promissory note over that property was emitted in favor of Mr. Manuel A. Domenech for a total amount of $205,000.00.

f.  That the monetary obligation guaranteed by the promissory note of reference, had been due since November 1st 2004, for which reason Mrs. Rodríguez requested to be granted homestead over said property, fearful that Mr. Domenech could demand payment at any moment.

g.  That Mrs. Rodríguez is the owner of the property in question, that she had not made any contribution whatsoever towards minimizing the debt of reference, and that she feared the execution of the promissory note held by Mr. Domenech.

h. That the residence located at Urbanización San Francisco had been, and still was, home to their minor daughter, who was not able to move and live anywhere else. *See*, Attachment 4.

12. Years after the homestead Resolution was emitted, Debtor Manuel A. Domenech Rodríguez filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code with this Honorable Court on June 20th 2010, 11 U.S.C.A. §701, et. seq. [Docket 1, Case No. 10-05835].

13. Subsequently, hereby Plaintiff Wigberto Lugo Mender, Esq. was appointed Chapter 7 Trustee for the present case on July 1st 2010. [Docket 5, Case No. 10-05835]. .

14. A thorough review of all files and documentation related to the present bankruptcy case revealed a significant debt still pending and owed by Mrs. Ruth E. Rodríguez Borges to Debtor Manuel A. Domenech Rodríguez' estate for the total sum of **two hundred five thousand dollars ($205,000.00)**, the source of which being the aforementioned liquidation settlement agreement, as issued by both parties through Public Deed No. 303 on November 25th 2002, "*Liquidación de Gananciales, Adjudicación y Modificación de Hipoteca*". *See*, Attachment 3.

15. Due to Mrs. Rodríguez' default of payment for moneys presently owed to Debtor's bankruptcy estate, hereby Trustee Wigberto Lugo Mender, Esq. filed the present Adversary Complaint with this Honorable Court for the turnover of property of the estate, on August 10th 2011. [Docket 1, Adv. No.11-00168].

5

16. However, on September 9th 2011, Mrs. Ruth E. Rodríguez Borges filed a "Motion to Dismiss" pursuant to Fed. R. Civ. P. 12(b)(6)(1) and 12(b)(6)(6), stating the present action is barred by the Rooker-Feldman doctrine, by the res judicata effect, and by the collateral judgment effect, based on the Homestead Judgment issued on June 30th 2005. [Docket 10, Adv. Case No. 11-00168].

17. It is hereby Plaintiff and Chapter 7 Trustee Wigberto Lugo Mender, Esq.'s firm position, that non of the allegations raised through the Motion of reference by the Defendant are pertinent to the present case, and that the Homestead Judgment of reference poses no impairment to this Honorable Court's authority to issue Judgment as requested in the present Adversary proceeding.

## II.    DISCUSSION OF APPLICABLE LAW

### A. INAPPLICABILITY OF THE ROOKER-FELDMAN DOCTRINE TO THE PRESENT CASE

18.    The Rooker-Feldman doctrine, applying to both federal district and bankruptcy courts, stems from two decisions of the United States Supreme Court: Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), from which it was determined that when a plaintiff seeks to litigate a claim in a federal court, the existence of a state court judgment in another case bars the federal proceeding, when entertaining the federal court claim  would be the equivalent of an appellate

review of that order. See <u>Ernst v. Child & Youth Servs.,</u> 108 F.3d 486, 491

(3d Cir. 1997).

19.    The doctrine bars claims raised in federal courts in two specific

situations- (1) when "the <u>federal claim</u> was actually litigated in state court

prior to the filing of the federal action" See, <u>Knapper</u>, 407 F.3d at 580, and

(2) when "the <u>federal claim is inextricably intertwined</u> with the state

adjudication, meaning that **federal relief can only** be predicated upon a

conviction that the state court was wrong." <u>Id.</u> (Emphasis supplied).

20.    Of narrow applicability, the Rooker-Feldman doctrine is "confined to

cases of the kind from which the doctrine acquired its name: cases brought

by state-court losers complaining of injuries caused by state-

court judgments rendered before the district court proceedings commenced

and inviting district court review and rejection of those judgments" See,

<u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp</u>., 544 US 280 (2005).

21.    Furthermore, if a federal plaintiff presents an independent claim, it is not

an impediment to the exercise of federal jurisdiction that the same or a

related question was earlier aired between the parties in state court. See,

<u>Skinner v. Switzer</u>, 131 S. Ct. 1289 (2011).

22.    Disposition of the federal action, once the state-court adjudication is

complete, would otherwise be governed by **preclusion law**, as the Full

Faith and Credit Act, 28 USCS § 1738, requires federal courts to "give the

same preclusive effect to a state-court judgment as another court of that

State would give." *See*, <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp</u>., 544

US 280, 293 (2005). "In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, **but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court**" *Id.* (Emphasis supplied). Further along in our Opposition, we will be able to show this Honorable Court that both claim and issue preclusion doctrines are also inapplicable to the present case.

23.     Furthermore, Clause (2) of Rule 7001 provides that a proceeding to "determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding. Although "validity, priority, or extent" are expressed in the disjunctive, often more than one of these aspects of a lien will be determined in the same proceeding. See, In re Cadiz Properties, Inc., 278 B.R. 744 (Bankr. N.D. Tex. 2002) (extent of stock ownership); In re Corky Foods Corp., 85 B.R. 903 (S.D. Fla. 1988) (interest in limited partnership); In re Colrud, 45 B.R. 169 (Bankr. D. Alaska 1984) (debtor's interest in mortgaged property).

24.     Accordingly, adversary proceedings as the present case are necessary for bankruptcy courts to determine such matters as the extent of a debtor's interest in partnership property and/or whether mortgaged property belongs to the debtor. Core proceedings that can be attended by this Court include, but are not limited to, matters concerning the administration of the estate, 28 USCS §157(b)(2)(A); orders to turnover property of the estate, 28 USCS §157(b)(2)(E); determinations of the validity, extent , or priority of liens, 28

USCS §157(b)(2)(K); and any other proceedings affecting the liquidation of
the assets of the estate, 28 USCS §157(b)(2)(O).

25.    The above-captioned case constitutes a core proceeding within the
present bankruptcy case that can and should be adjudicated by this
Honorable Court, as hereby Plaintiff seeks an Order for Defendant Ruth E.
Rodríguez Borges to turnover property of the present bankruptcy estate by
paying hereby Plaintiff and Trustee the total amount of **two hundred five
thousand dollars ($205,000.00)** as money owed for herein Debtor's
participation over Defendant's residential property, as agreed under Public
Deed No. 303, and pursuant to 11 USCS §542(b).

26.    Pursuant to Section 542 of the Bankruptcy Code, the amount claimed in
the present Complaint is property of value to the estate, and as such should
be recovered by hereby Plaintiff and Trustee Wigberto Lugo Mender, Esq.,
as he is entitled to the use of this property and these funds, to be available
for further distribution among all creditors in this case.  Furthermore, hereby
Plaintiff Wigberto Lugo Mender, Esq., as Chapter 7 Trustee for the
bankruptcy estate of reference, is entitled to exercise all causes of actions
or proceedings and request all remedies that could have otherwise been
followed through by herein Debtor Manuel A. Domenech Rodríguez at the
moment of filing of the present petition.

27.    Contrary to the dispositions of the Rooker-Feldman doctrine, the
adversary proceeding filed herein is not a federal claim that was litigated in
state court; nor is the relief sought by hereby Trustee "predicated upon a

conviction that the state court was wrong". Hereby Trustee seeks determination as to the existence of the debt in question, the validity and nature of Debtor's lien over the property located at Urbanización San Francisco, and the subsequent issuance of Judgment, to be able to be enforced by the Plaintiff in the future.

28.     In filing the present Complaint, hereby Plaintiff and Trustee Wigberto Lugo Mender, Esq., was not seeking for this Honorable Court to review and/or reject the Puerto Rico State Court Homestead Judgment.


## B. RELIEF SOUGHT UNDER RULE 12(b)(6) MOTION TO DISMISS SHOULD NOT BE GRANTED

29.     Herein Defendant Ruth E. Rodríguez Borges also looks to move this Honorable Court to dismiss the present Adversary Complaint for "failure to state a claim upon which relief can be granted" See, Fed. R. Civ. P. 12(b)(6), made applicable to these proceedings by Fed. R. Bankr. P. 7012.

30.     The purpose behind a Rule 12(b)(6) Motion to Dismiss is not to delve into the merits of the case, "but to test **the sufficiency of the factual allegations** in a complaint" See, In re Am. Home Mortg. Holding, 2011 Bankr. LEXIS 3856 (2011) (Emphasis supplied).  More so, in considering this type of motion, a court reviews both the complaint as well as "any document integral or explicitly relied on in the complaint" See, U.S. Express Lines, Ltd. V. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

31.     As the moving party bears the burden of persuasion, "the court *must* accept all of the allegations in the complaint as true and view any inferences

drawn from such allegations **in the light most favorable to the plaintiff**"
See, <u>In re Plassein Int'l Corp</u>., 352 BR 36, 39 (2006) (Emphasis supplied),
as also the motion should be granted only if "it appears beyond doubt that
the plaintiff can prove no set of facts in support of his claim which would
entitle him to relief" See, <u>Lexington Healthcare Grp., Inc.</u>, 363 BR 713, 715
(2007) (quoting <u>Conley v. Gibson</u>, 355 US 41, 45-46 (1957)).

32.    Now then, the Supreme Court has recently adopted a heightened
pleading standard by deciding that "[t]o survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face" See, <u>Ashcroft v. Iqbal</u>, 129 S. Ct.
1937, 1949 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 US 544, 555 (2007).
In applying a two-pronged approach, the court must now assume the truth
of the factual allegations contained in the complaint and "determine whether
they plausibly give rise to an entitlement to relief" Id.

33.    It is important to note that-

> [i]n cases decided both before and after *Iqbal* and
> *Twombly*, courts have given more leeway in pleading
> where the bankruptcy trustee is the plaintiff […] Iqbal
> and Twombly require more factual detail in Rule 8
> notice pleading; thus, the trustee now must plead in
> greater detail while still, in many cases, being forced to
> rely on secondhand information.  **As a result, when
> considering the Motion to Dismiss, Trustee's
> status is a necessary part of the context in which
> this Court evaluates the facial plausibility of the
> Complaint.** See, <u>Saracheck v. Right Place, Inc.
> (Agriprocessors, Inc.)</u>, 2011 Bankr. LEXIS 3671, at
> page 10 (Emphasis supplied).

34.    Section 542 of the Bankruptcy Code provides hereby Plaintiff with a

cause of action for turnover, through which it is required that a person or entity in possession of property belonging to the estate, deliver such property, or value thereof, to the trustee. See, 11 USCS §542(a). Upon having to determine on a Rule 12(b)(6) Motion to Dismiss, this Honorable Court must examine whether hereby Plaintiff has presented a properly pled complaint asserting a claim for turnover by alleging an undisputed right to recover the claimed debt. See, In re Hechinger Investment Co., 282 BR 149, 162 (2002).

35.     Hereby Plaintiff and Trustee Wigberto Lugo Mender, Esq. is certain that upon careful examination of the Complaint pertaining to the present adversary proceedings, as well as the documented evidence attached therein, this Honorable Court will find it contains more than sufficient factual matter that, accepted as true, states a claim to relief that is plausible on its face. See, Docket 1; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).


**C. AWARDED HOMESTEAD IS NO IMPAIRMENT FOR THIS HONORABLE COURT TO ISSUE JUDGMENT IN THE PRESENT CASE**

36.   Defendant Mrs. Ruth M. Rodríguez Borges additionally contends this Honorable Court is impaired from adjudging the present case due to the res judicata and/or collateral judgment doctrines.

37.    Sure enough, the provisions of the Full Faith and Credit Act establishes that "[t]he records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions

[…]" and "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken" See, 28 USCS § 1738.

38. More over, under the doctrine of res judicata, sometimes also referred to as claim preclusion, "a final judgment on the merits of an action involving the same parties (or their privies) bars a subsequent suit on the same cause of action." See, Eastern Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 336 (3d Cir. 2000).

39. In attending the effect of a state court judgment in a federal court under the res judicata doctrine, the law to be applied is that of the state. See, Penobscot Nation v. Georgia-Pacific Corp., 254 F.3d 317, 323 (1st Cir. 2001); that being, in our case, Article 1204 of the Civil Code of Puerto Rico, which reads, in part, as follows-

> **§ 3343. Destruction of presumptions; res judicata**
>
> Presumptions established by law may be destroyed by proof to the contrary, except in the cases in which it is expressly prohibited.
>
> Only a judgment obtained in a suit for revision shall be effective against the presumption of the truth of the res adjudicata.
>
> In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be **the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such**.

[…]

It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same. See, 31 LPRA §3343.

35.  The *res judicata* doctrine, meaning "matter [already] judged",  establishes the rule that a final judgment on the merits by a court having jurisdiction is conclusive between the parties therein as to all matters that were litigated or that could have been litigated in that suit. See, <u>P.R. WireProd. v, C. Crespo Assoc</u>., 2008 TSPR 189.  However, such doctrine is not exempt from having exceptions, be it in **law** or in **equity**.  See, <u>Pérez v. Bauzá</u>, 83 DPR 220 (1961); <u>Figueroa v. Mun. de San Juan,</u> 98 DPR 534 (1970).

36.  The res judicata doctrine should not be applied in an inflexible manner, especially in cases where such an application would lead to an impairment of justice, produce absurd results, or when considerations of public interest are involved.  See, <u>Meléndez Soberal v. García Marrero</u>, 158 DPR 77, 92 (2002); <u>Pagán Hernández v. UPR</u>, 107 DPR 720, 736 (1978); <u>Millán v. Caribe Motors Corp</u>., 83 DPR 494, 509 (1961).  "In other words, **the rule is not absolute** and should always be considered alongside the healthy principle that justice should be awarded in each case" See, Pérez v. Bauzá, 83 DPR 220 (1961) (Our translation)(Emphasis supplied).

37.  Now then, the doctrines of res judicata (or claim preclusion) and collateral

estoppel (or issue preclusion) are closely related. "A fundamental precept of common-law adjudication, common to the doctrines of claim and issue preclusion, is that **a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies**" See, 18-132 Moore's Federal Practice-Civil §132.01 (Emphasis supplied).

38.    "The second doctrine, collateral estoppel or 'issue preclusion,' recognizes that suits addressed to particular claims may present issues relevant to suits on other claims. In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties" See, Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 535-536 (5th Cir. 1978). More so, "[f]or issue preclusion to apply, the issue must have been **actually litigated** and **have been essential** to the prior decision […]", "for which reason once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party (or privy) to the prior litigation" See, 18-132 Moore's Federal Practice-Civil §132.01 (Emphasis supplied).

40.  This Honorable Court is not barred from attending the above-captioned case because of res judicata or collateral estoppel. Once again we assert that the issue in controversy brought forth in the present adversary proceeding is not whether Mrs. Ruth Rodríguez Borges has a right to claim homestead over the

property of reference as custodial parent of the minor daughter had between her and Debtor Manuel A. Domenech Rodríguez.

41.  Hereby Trustee requests to be able to secure the amount of two hundred five thousand dollars ($205,000.00) presently owed to Debtor's estate, by seeking issuance of Judgment from this Honorable Court as to that effect, so as to be able to reclaim the turnover of such moneys and/or property in the future, as soon as such Judgment becomes enforceable.

42.  If anything, said doctrines, as illustrated by the Defendant, more than injure, could actually benefit hereby Plaintiff's action, since the Puerto Rico State Court found it **essential** to its determination of awarding Mrs. Rodríguez homestead over her property, the fact that she is indebted to Mr. Domenech for the amount of two hundred five dollars ($205,000.00), that such debt is already payable on demand, and that he holds a valid lien over the residential property located at Urbanización San Francisco.

43. Also, obtaining the Judgment and collecting the judgment are two (2) separate and different things.  The Homestead State Judgment of reference is basically a defendant defense for the collection of the Judgment against an specific property, and not a defense for the issue of a Judgment against defendant in the present case.  Hereby Trustee have the right of obtaining the requested judgment against defendant and collect the same from other properties and/or from any money received or to be received by defendants.

**D. HOMESTEAD STATE JUDGMENT DOES NOT BAR THIS HONORABLE COURT FROM ISSUING JUDGMENT IN THE PRESENT CASE**

44.   Furthermore, this Honorable Court is not impaired by the Homestead Judgment of reference from issuing its own determination in regards to the facts related to the above-caption adversary complaint.

45.   It is true that in bankruptcy, family support obligations, such as the right to homestead under 31 LPRA §385a, receive extra protection for important policy reasons, *See*, <u>Smith v. Smith</u>, 263 BR 910 (2001); G-44 Collier on Bankruptcy §1.4.4; and in making the inquiry into the nature of such obligations, the bankruptcy court will necessarily have to examine state law. See, <u>Schroeder v. Fed. Nat'l Mort. Assoc.</u>, 432 F. Supp 114 (1977); 4-523 Collier on Bankruptcy §523.11.

46.   The disposition under which homestead was awarded to Defendant Ruth E. Rodríguez Borges, is Article 109-A of the Puerto Rico Civil Code, which reads as follows-

> **Art. 109-A Possession of home by custodial parent after divorce**
>
> (a) The spouse to whom custody is granted as a result of a divorce of the **minor children** of the married couple, or the physically or mentally disabled children, whether of legal age or minors **<u>or who are dependents as students until the age of twenty-five (25)</u>,** shall have the right to claim the dwelling which constituted the home of the married couple **<u>and which is held as *community property*</u>** claim as a homestead, *during* the minority of the children, *during* their studies or because of the disability of the children who remained in his/her custody due to a divorce.

The **community property** which constitutes the homestead **shall not be subject to partition** while any of the conditions by virtue of which the former was granted exists. Provided, That the right to a homestead may be claimed from the moment it is needed, and may be claimed in the divorce suit, during the process thereof, or after the same has been decreed. Once claimed, the judge shall determine what, in fairness, is proper according to the special *circumstances of each situation.*

The spouse who claims the right to a homestead may retain all those goods regularly used in the home.

When the right to a homestead is claimed after the divorce has been decreed, the same may be granted by the Court that heard the divorce case. See, 31 LPRA § 385a (Emphasis supplied).

47. By merely attending to the statute itself, it is clear that the right to homestead is **judicially modifiable,** for it depends on the circumstances surrounding the minor in custody while living in the former family home. Furthermore, all claims of the non-custodial parent concerning an interest of property over the family home must be paralyzed, only to the extent the circumstances and conditions are maintained as prescribed by the above-cited disposition. See, Cruz Cruz v. Irizarry Tirado, 107 DPR 655 (1978).

48. In the present case, it is essential that the circumstances and conditions surrounding the minor daughter A.G.D.R. be reevaluated via discovery process, for in reaching legal age within the next year, she will have to be both studying as well as maintaining satisfactory academic progress in order to preserve her right to homestead over the residential property in Urbanización San Francisco. Such circumstances are revisable by judicial means.

49.  In addition, it is important to note that the right to homestead may be awarded in cases where the community property is yet to be subject to partition, or in cases where it is the *non-custodial* parent who maintains ownership over such property, contrary to the case at hand where Defendant Ruth Rodríguez had become sole owner of the property of reference three years prior to her request for protection under this disposition.  See, <u>Candelario v. Muñiz</u>, 2007 TSPR 117; <u>Rodríguez v. Pérez</u>, 161 DPR 637 (2004); <u>Irizarry v. García</u>, 58 DPR 280, 284 (1941); <u>Cruz Cruz</u>, *supra*.

50.  Furthermore, the Puerto Rico District Court has determined that-

> Exemption […] protects the homestead property from such debts, but does not relieve the debtor, either directly or by operation of law, from any indebtedness he may have incurred. **He <u>continues liable</u> for all his debts; and they may be prosecuted to judgment as though he were not a householder with a family, and although no homestead law had ever been enacted.**
>
> No state attempts by homestead legislation to exonerate the debtor from the duty of meeting his obligations.  Homestead exemption statutes are not bankrupt laws.    They offer no discharge. Everywhere the debtor may be sued for his ordinary debts as well as for any others, contracted at any time, **and judgment recorded** <u>against him will create a general lien bearing all his real estate except his homestead</u>.
>
> […] The law does not inhibit the rendition of the judgment, **but saves the homestead from any property liability resultant**.  No valid writ can be issued or executed against the favored property. The family cannot be disturbed or deprived of the home. Véase, Rufus Waples, *A Treatise on Homestead and Exemption*, at page 8, según citado

en <u>Federal Home Loan v. Jiménez Soler</u>, 614 F.
Supp. 85 (1985) (Enfasis suplido).

51. The term "judicial lien" is defined in section 101 to mean a "lien obtained by

judgment, levy, sequestration, or other legal or equitable process or proceeding.",

and one can clearly be construed by this Honorable Court over both the property

subject to the promissory notes in Debtor's possession, as well as over all other

properties and assets of the Defendant, and judgment as to that effect can be

recorded regardless of the possibility of present enforcement as such.


**WHEREFORE**, Trustee Wigberto Lugo Mender, Esq., respectfully requests that this

Honorable Court DENY Mrs. Ruth E. Rodriguez Borges' "Motion to Dismiss" [Docket

10, Adv. Case No. 11-00168].


**I HEREBY CERTIFY** that on this same date a copy of this motion was filed with the

Clerk of Bankruptcy Court using CM/ECF system which will serve a copy of the same to

all parties interested including: LUIS A MELENDEZ ALBIZU on behalf of Plaintiff RUTH

RODRIGUEZ BORGES lamelendez@prtc.net, MelendezAlbizuLaw@gmail.com.


**RESPECTFULLY SUBMITTED,**
In San Juan, Puerto Rico this October 21st, 2011.

**ATTORNEYS FOR THE TRUSTEE**

***s/Rafael E. Silva Almeyda, Esq.***
USDC-PR-206901
E-mail: silva.almeyda.law@gmail.com

***s/Rafael V. Olivieri-Géigel, Esq.***
USDC-PR-226712
E-mail: lawrog@gmail.com

***s/Rene Arrillaga Armendáriz, Esq.***
USDC-PR-211403

E-mail: arrillagalaw@yahoo.com

**ARRILLAGA & ARRILLAGA**
Ave. Hostos #430- Altos
Hato Rey, P.R. 00918
Tel. (787) 763-7663 / 274-1147
Fax (787)754-1644 / 763-7622